Good morning, Your Honors. I'm Kathleen Hamiltz for the defendant appellate, William Fillyaw. Mr. Fillyaw and the co-defendant, Johnny Parker, were convicted by a jury of first degree murder against Lysandra Shaw and also of the attempt murders of LeBron Graham and Ernest Hughes. This was based on a shooting that occurred in North Chicago at about 1230 at night on June 29, 2007. At that time, two men, one allegedly armed with a shotgun and the other with a handgun, kicked open the door of a second story apartment and fired upon five people who were inside, killing Shaw and seriously injuring Graham and Hughes. The offenders fled and, however, Parker was arrested the next morning at about 930 and the defendant was arrested over a week later. There was no physical evidence that directly connected Mr. Fillyaw to this shooting. Rather, the state's case was based primarily upon the testimony that was given by three people. One was an eyewitness, attempt murder victim LeBron Graham, who testified that he was inside the apartment, that he already knew who the defendant and Parker were and he recognized them as the offenders. The second was the defendant's friend, Ricky Powell, who actually testified that he didn't know anything about these crimes but was confronted on the stand with a prior inconsistent statement that he had made to an investigator for this case in which he claimed that the defendant had virtually admitted having committed the shooting. And Deshea Rogers is the third. She used a photo lineup to make an out-of-court identification of the defendant as one of two people that she said she saw come out of the front door of the building where the shooting occurred and flee up an alley. While the testimony of one eyewitness can be enough to support a conviction, that testimony must be credible. You call the Powell statement a prior inconsistent statement. I know you're objecting to its admission substantively, but why was it error to admit that as a prior inconsistent statement? You mean as impeachment? Although the prior inconsistent statement statute says that nothing in the statute will prevent a statement from being used for that purpose, there are rules of law, case law, that prevent its use in cases where it does not affirmatively damage the state's case against the defendant. So here, all Powell basically did was said, I have no knowledge of this crime when he testified. And so he was confronted then with a statement in which he said he did. But it didn't affirmatively damage the state's case for him to simply say, I have no knowledge of this crime. If he had said something, for example, if he had said, I, I, somebody told me that they or somebody purchased a shotgun from me and and then told me that they committed the crime. That person was Earl X, then that would have affirmatively damaged the state's case. And the case then would be justified with impeach and be able to impeach Philia, I mean Powell with his with his prior inconsistent statement that if that was told to him by the defendant. However, it wasn't that sort of a thing. So because it did not affirmatively damage the state's case, it didn't matter. And that way, the case, this case was very similar to the McCarter case that we cited in our briefs where, likewise, a statement was that admissible either as a substantive evidence or as impeachment for that very reason, because the witness simply said, I didn't make that statement. The addressing was available as a substantive evidence that would only have been the case under the statute if the statement narrates, describes or explains an event or a condition of which the witness had personal knowledge. And our argument there is that the portion of Powell's statement regarding the defendant's admission that he committed the crime was concerning matters that Powell did not have personal knowledge of. He simply was reporting what he was told by the defendant. And again, in that respect, this case strongly resembles McCarter and also the Morganson case that we cited in our briefs where similar things happen. I believe in those cases, the defendant makes a statement to a wife who tells the police that the defendant had confessed. And then when she takes a stand, says either that she fabricated it in one case or that she never made the statement in another. The state actually agreed with us that it was not admissible as substantive evidence in its brief. Where we disagree is whether or not this was due to ineffective assistance of trial counsel, that the statement was not objected to on this particular ground. The defense counsel did make some objections to the statement. However, they were all meritless. They were too general. For example, defense counsel said that it was irrelevant. He was focusing on the end of the statement where Powell said that he had purchased, I mean, where Powell said that he had sold a gun. Did he make some argument about brutalty? I did not make an argument concerning brutalty. No, I'm saying the trial counsel. Oh, yes, yes. Well, that really isn't general. That's misplaced. Yes. Yeah, general and misplaced. It was rather creative. He came up with virtually everything except the right thing. So assuming that there's error, is it prejudicial? That is, I think, the heart of the issue here. We believe it was because LeBron Graham's eyewitness testimony was not particularly strong. I'm not saying that it should not have been admitted. It was admissible. But it was not credible, not sufficiently credible to stand alone. There were four people who survived the shooting. Only two of them testified. One of them was Graham, who claimed that the shooters burst in with their faces exposed and he was able to identify them. The other was Jetta Little, a woman who was there, and she testified that they came in with their faces completely covered and she could not tell who they were. She actually was acquainted with ‑‑ she didn't testify. It was a trial. But at the motion to suppress her identification, she revealed she was acquainted with the defendant and could not identify him as the shooter. Graham also didn't identify Parker and the defendant at the first opportunity that he had to do so, although he says that he was unconscious at the scene when the police arrived. The police officers who found him at the scene all said that he was conscious, that he was coherent, that he knew that he had been seriously injured, and that he actually thought he was dying. It's extremely odd under those circumstances for a person, if they know who shot them, not to mention it. He was taken to the emergency room and apparently didn't tell anybody there that he knew who had shot him. He had surgery. Following the surgery, he visited with his mother, his sister, and his girlfriend, which gives rise to the possibility that he was in a position to hear street rumors concerning his, you know, people may be speculating. How precise was the police officer's testimony about consciousness? Well, he did say he was conscious. He said he was, you know, hollering, get me an ambulance or EMS or whatever, I'm dying. You know, he was certainly not unconscious, at least. So would this be an excited utterance if he didn't think he was conscious at the time, even though the police officer saw he was? Are you thinking that maybe he was unconscious but speaking? Well, I was under the impression that for something to be admissible as an excited utterance or based upon the idea that one is about to die, a witness who's supposed to be testifying is supposed to be the one that thinks they're going to die, not the police officer or some third party who observes them. And if this individual thought that he was unconscious, how could he think that he was testifying such that it would be a testimony indicating that he was dying and therefore anybody he identified might be used as substantive evidence? If he was unconscious. But here, our concern here is the fact that he simply didn't seize the opportunity to communicate the identity of the offenders at his first chance. Are you saying his testimony is impeached by his statement that he was unconscious, or are you suggesting that it indicates that it's inadmissible as it happened? No, I'm simply suggesting that it's a dubious circumstance that surrounds his identification. There was even another worse dubious circumstance, and that was the fact that his story changed in a remarkable way. On the day of the shooting, finally at 4 p.m. following his surgery, following his visit with his relatives and his girlfriend, at 4 p.m. he did tell the police that the offenders were Parker and the defendant. But he then said there were only two offenders. A month later, he changed that and he said there were three. He said that Earl Epps was also present. He said that Parker entered the apartment first, Earl Epps entered second, and the defendant stood in the doorway. He said Epps didn't have a gun, he just stood there. However, at trial, he withdrew the claim that Earl Epps was involved. At trial, he said, well, I wasn't sure that I could see Earl Epps standing in the hallway and didn't want to wrongly accuse somebody who wasn't guilty. However, that isn't what he told the police in his statement. He said Parker came in first, Epps came in second, the defendant stood in the doorway. If he could see the faces of Parker and the defendant, he certainly could see Earl Epps if Epps was there. And more importantly, if there were three people there, if the defendant was the last one in, he could have no question but that there were three people there. So he added somebody in, and then he took that person back out. And I think it's also significant that yet a little said there were only two offenders that she could see, and Deshea Rogers, if we believe that she did see the offenders run out the front door, she only saw two people. How do you address the fact that his identification and Rogers' identification are both corroborated by the cell phone, the co-defendant's cell phone, being found in the alley where the shooting occurred? They are corroborated insofar as the identification of Parker, but not necessarily of Filion. The only thing that connects in this case, there is no evidence that Filion and Parker hung around together, that they were seen together shortly before the crime or shortly after it or anything like that. Instead, the only thing that connects Parker and Filion to each other is the same evidence that we're complaining about, Powell's statement, Deshea's identification, and Graham's identification. So I'm simply saying, again, these are things that weaken the identification testimony of Graham. It doesn't necessarily render it inadmissible. It just makes it weak. It makes it in need of bolstering, and the bolstering in this case was provided by Powell's claim, the defendant admitted he committed the crime to him and Deshea's identification. It's notable that they heard this, a jury heard this prior inconsistent statement over and over again during this trial. They heard it from Powell himself, well, you know, directly from Powell himself, and was confronted with it by the officer during this direct examination. During the closing argument, how much did the state highlight or reiterate or relate what you're talking about, insofar as the evidence that you claim is erroneous? It was emphasized heavily during both closing and rebuttal argument. Was there anything else that the state raised that might have supported the conviction? And if so, on a scale of one to ten, what would you give the other evidence vis-a-vis the evidence that you claim is erroneous? I believe that the only thing that really supports the conviction, take away the two things we're complaining about, is LeBron Graham's identifications, which again are marred by these peculiar aspects of it. Did the state even argue in the closing argument that identification? I'm sorry, that... During closing argument, did the state raise or accentuate or emphasize LeBron's identification? The state did try to make it sound like it was an acceptable form of evidence, yes, but also, as I say, reiterated this, you know, these made multiple references to the prior inconsistent statement, and in both closing and rebuttal said things like, this can be considered an actual admission of guilt, I believe was the first thing that the state said about it. And then, to top it off, the written statement went back with the jury during deliberations, so that they could look at that again and again. Did they ask for it or did it go back in the beginning? It went back at the beginning. There is no more damaging evidence that can be presented against a defendant than his admission, and so it's extremely powerful, it's overwhelming. So it's very difficult to say that this didn't have impact on the outcome of this trial. Let me take you back to the objections that the defense counsel raised. The defense counsel, when the evidence was being admitted or sought to be admitted by the prosecutor, actually objected to foundation, which would have been an appropriate objection if the foundation was improper under 11510.1 due to lack of personal knowledge. That's an appropriate objection more than a general objection. Except that the words personal knowledge were never uttered during any of the discussions of this. And so the judge didn't have the opportunity to check and see whether or not there was a foundation. The judge was looking at foundation in terms of whether Powell admitted having made the statement in the first place, but he wasn't considering whether the content of the statement, and it only goes to part of the statement, too, is the other thing. So that objection was to the entire statement. I believe it's fair to say that defense counsel referred more to the purchase of the gun when he discussed this than he did to the admission. He seems to think he was stuck with the admission. Your point about the only thing that the witness had knowledge about was the sale of the shotgun, the shells. Yeah. We can see he had personal knowledge of that. However, that's not particularly probative evidence. That was a gun sale that took place two months before this crime. There was no weapon that was ever found afterwards that was associated with this shooting. They weren't consistent, were they not? Well, it was only consistent in that it was a shotgun. And so we have a situation where the defendant is placed in a category of all the people in Lake County, I suppose, across the world who purchased a shotgun or owned a shotgun prior to this crime. And that doesn't narrow it down much. The 12-gauge shells found at the scene. Yes, yes, they do know what gauge a shotgun was, but it wasn't like it was a particularly unusual type of shotgun. What about the limitation of the cross-examination of Rogers and her mental illness or alleged mental illness? Yes, that is part of the other error. We acknowledge that we don't know what that cross-examination would have elicited because the medical records have been examined in camera and only some things have been allowed out and that they did not include her diagnosis or any information regarding the implications of that diagnosis, whatever it may be. All that was allowed in was the fact that she had been taking a psychotropic drug within a few months of this crime and that she had ceased taking it, I believe it was approximately a month before she made her observations and probably more significantly before she made her identifications. So that's why we believe that it's necessary for this court to do an in-camera inspection. And I believe the state, although the state believes that we have forfeited this claim, does agree that this court has authority to do that and that it is up to this court to decide whether or not to. And we would urge you to do so. And if there is something in there that would have been of value, then yes, it should have been admitted and then we have reversible error. Why would we sit here today and second-guess? You know the trial judge did an in-camera inspection. Do you have anything that would indicate that that in-camera inspection was not done appropriately and that, in fact, what you got was all you were entitled to? I guess the only thing I could say would be because the court did allow the testimony regarding the medications, that gives rise to a reasonable inference that there must be a diagnosis that justified the medications. That's what the court would not allow in. Well, if someone's taking pain medication, do you need to know what's wrong with them? Isn't it the fact that they're taking the medication that maintained their ability to observe and or recall? The reason they're taking it, why is that relevant? Well, in this case, it would be because she wasn't taking the medication at the time that she made her observations and made her identification. So whatever it was that she required the medication to treat, she wasn't being treated at the time. So what we know what this does is it informs us that she has some diagnosis that justifies the administration of these medications. And that she had, on her own, decided not to take them at the time that all these events occurred. And so that raises a question as to whether why was she taking it. Does she absolutely need it in order to be a reliable observer and recaller, I guess you would say. There's a possibility that she has some mental disorder that causes her to be unusually susceptible to suggestion, for example. And she was given a suggestive photo lineup. Where's the balance between a witness's right to privacy and your right to effective cross-examination? I agree that that is a major concern here. But that is why this matter would have been far better addressed in a motion to suppress the I.D. prior to trial. Where you don't have as much of a privacy concern. Because that sort of a hearing could be done. You have a right to a public trial, but you could do it in a more private setting, perhaps. Isn't that exactly what the trial judge did? She took everything. Judge Rossetti took everything, looked through it, and said, here it is. I have looked at everything there is to do. Everything that was returned, I assume, pursuant to a subpoena or maybe the State just tendered it. She said, this is all there is. You're asking me to look into what she saw and find blindly that she made a mistake. Well, actually, we are asking that, yes, in this case, just to determine, you know, to make sure that she didn't make a mistake. Based on what? I mean, because she was taking medication, and she says, I stopped taking my medication. Yeah. Yeah. To see whether the reason that medication was ‑‑ Wait, but why do you assume that Judge Rossetti didn't come to a conclusion and find that it was not relevant? Because there is no ‑‑ I don't. I just don't know, is the thing. But, see, this is not really ‑‑ we think even without that, even if we just leave what we know about her disorder is that she was receiving drugs, we think that there was enough presented on this record that defense counsel should have filed a motion to suppress her identification. There was the fact that, you know, that she was taking these medications and was off of them. There was the fact that she was 15 years old. She had some sort of cognitive disorder because she was unable to read and write at that age. She made the identifications from the lineups under inherently coercive, mildly coercive circumstances. Your claim is that this is ineffective assistance of counsel. Because he, yes, because he, well, my claim about the in camera inspection, that's actually separate. But defense counsel tried to get, you know, wanted the court to go through those and find everything that was useful for the defense. So he wasn't ineffective in that regard. I mean, he at least realized that those medical records should be examined. He was ineffective in that he didn't file a pretrial motion to suppress this identification. And worse yet, he thought he did. In his post-trial motion, he argued that the court had erred in denying his motion to suppress Deshaies' identification, and he never made one. Was he on drugs or not on drugs at the time? The defense counsel? Yes. You know, I cannot explain how this could have happened. I find it to be, especially since he did move to suppress the identification testimony of several of the witnesses, including some who never made identifications. So it was quite an oversight. And we believe that that error, combined with the error regarding the prior inconsistent statement, shows that counsel just, he didn't look up the law, and he didn't keep accurate track of his actions taken in this case. Those are reversible errors. And we ask your honors to give this defendant a new trial. Thanks. Thank you. Counsel? May it please the court and counsel? My name is Anastasia Brooks, and I represent the people in this case. First of all, with respect to the first issue of the prior inconsistent statement, the fact is that the counsel did object. And if the issue was whether counsel had adequately preserved an objection at the trial level, at least, a contemporaneous trial objection, that is, then that issue would have been preserved as far as raising contemporaneous objection. However, because there was no inclusion of this particular issue with respect to William Filyaw, this defendant in this appeal, in the post-trial motion, that issue is forfeited on appeal. Because there has to be both a contemporaneous objection and they have to give the judge an opportunity in the post-trial motion to reconsider that. Is it enough to simply say objection foundation without explaining that you're relying on this personal knowledge rule? Well, the defense attorney said that, my recollection is in the record, that the defense attorney argued it should not come in substantively. There were other objections made with respect to this statement. But that should be enough of a specific objection to the nature of the evidence being objected to, to give the trial court an opportunity to rule on the basis of the objection. It doesn't have to be so hyper-specific in order to preserve the opportunity for the trial court to understand the basis of the objection and make a ruling accordingly. So with respect to the failure to preserve issues for appeal, the only Supreme Court doesn't let parties make complaints about ineffective assistance of counsel without establishing plain error. If the only complaint here were failure to preserve the issue for appeal. However, the defense is also complaining here as well that there wasn't a sufficient objection at the trial level, during the trial, in order to get the trial court to rule in his favor. So that's a separate issue. That is properly a subject of a complaint of ineffective assistance of counsel. I wanted to kind of pull those apart because in order to show that there are, in fact, two different complaints of ineffective assistance of counsel, but yet the defendant doesn't make the complaint of, under the plain error rule, in which the defendant would either have to show that the evidence was closely balanced and that the error was prejudicial and tilted the scales of justice against him, or that this error deprived him of, was so prejudicial, it deprived him of a fair trial, and that under the second prong of plain error, even an objection and an instruction for the jurors to disregard this would have been inadequate in order to preserve his right to a fair trial. So he has to assume that burden, but yet he's not even attempting that, even though the state has suggested in this brief that that's something, an avenue in which the defendant should have been exploring, but yet he's electing to stand only on his complaint of ineffective assistance. So the ineffective assistance, just so I'm clear on this, so the ineffective assistance claim, when someone's, a defendant's claiming failure to preserve the record, the defendant first has to go through the plain error analysis and then go on to the Strickland analysis? And how do those two interplay there? I think it was the Coleman case that decided, they said, the Supreme Court of Illinois said that the defendant's rights are protected by the plain error rule. So essentially, the application is coextensive with, in other words, there is no prejudice if it's not plain error, because then the failure to preserve is not prejudicial. If it is plain error, then he gets his relief, and then you don't have to go on and consider Strickland. So essentially, he can't show, failure to preserve issues for appeal is something that he can obtain relief on without first going through the plain error analysis, and that's what he's failed to attempt here. So now, essentially, we're down to, is the trial counsel's alleged failure to adequately object? This was objected to, but apparently not good enough for the defendant's desire. Is that ineffective assistance under Strickland? And in this direct appeal context, we're dealing with an alleged omission of conduct by trial counsel in a direct appeal, in which the record was not developed specifically for this court to consider whether trial counsel was incompetent and whether this omission was prejudicial to the defendant, the two promises from Strickland. So it's a very high burden to me anyway, but to attempt this in a direct appeal context where the record doesn't show the basis of trial counsel's thoughts and reasoning, it's not impossible. Wait, you do agree that this, do you or do you not agree that this statement, the portion of Powell's statement that relates to the events of the crime, was not admissible as substantive evidence? Right, the portion that says that me and Johnny Parker, and I rephrase, there was no good grammar in this, burst in, shot people, that part is not subject, there's no personal knowledge, and he should not have been allowed to testify to that because under the Cruz case as well, that portion is not affirmatively damaging. I mean, his trial testimony wasn't affirmatively damaging, so therefore there would have been no purpose to include that part in a prior and consistent statement. So how much more of the record has to be developed on an ineffective assistance claim if your attorney is allowing in a statement, basically a confession, as to the crime? He didn't allow it in. He fought it. He fought it with objections. And the claim here is, and the defendant has made this claim again in brief in the oral argument, is that this attorney was incompetent and ignorant of the law, and essentially these are allegations made against the attorney who has had no chance to respond to them, and it's based on a record where strickling requires the presumption that the attorney is providing reasonable assistance. Essentially the presumption is against the defendant, and the defendant is trying to overcome it without hearing anything from the lawyer as to what the lawyer was actually thinking. So essentially only if this were a case in which he establishes prejudice, because that's an independent prong for dismissing a strickling claim. If he can show prejudice, which we're not conceding, but then the appropriate course would be for this court to defer consideration until a post-conviction petition. If this case came down to was the lawyer competent or incompetent in failing to adequately object according to the defendant's argument, if it's not prejudicial, then this court can reject it on that ground alone. It doesn't have to consider whether the lawyer knew what he was doing or not. If I understand your argument correctly, what you're saying is if an attorney objects on any grounds, that's not ineffectiveness for counsel. I'm sorry, Your Honor, it's not any grounds. He objected specifically to the substantive admissibility. If the lawyer thought that includes every element of that statute, which is the basis for substantive admission, but didn't say those words personal knowledge, essentially that's the defendant's complaint here. My lawyer didn't say personal knowledge to the trial court, and that was the only major thing that the lawyer did want to say. Well, if he didn't say it, is it a procedural default, and this argument is now waived or forfeited? Right. It's forfeited because he didn't include it in the post-trial motion, but as far as the contemporaneous trial objection, as long as there is that objection to saying, Judge, this is not substantively admissible, and as long as that gives the trial court an adequate opportunity to rule on that objection, that should preserve the issue as far as contemporaneous trial objection goes. Did I understand you to say earlier that your opposing counsel was ineffective for not raising ineffectiveness below or in the order or the priority that she should? I'm sorry. The issue I was raising here in this appeal was that she's not making a claim of plain error. I'm not claiming that she's ineffective for doing so. That's up to the defendant. Okay. So you're not saying that appellate counsel is ineffective for failing to raise plain error. She's effective because she's raising ineffectiveness in trial counsel, but you don't believe that there's any merit to that argument? What my argument is, of setting the prejudice part on the side, which I believe there is no prejudice, and I can get to that, the point is she's assuming the burden of showing that her counsel, his counsel was incompetent, on a record not developed for that question. So in other words, if he wanted, he could make the argument under the plain error rule, the first prompt plain error rule. I'm not saying it's a good argument, but he could at least try to make that burden of persuasion of showing the case was closely balanced enough that this case could be reversed on that ground in this appeal without having to go to post-conviction. Essentially, that's the point I was trying to make. The defendant is elected not to do that. And is it plain error because it is plain error that this evidence should not have been used substantively? The error is, I would concede that the error was clear or obvious for purposes of plain error rule. However, the defendant still has to show that his procedural default should be excused under one of the two prongs of plain error analysis, which we contest on both. However, the defendant has not attempted to meet that burden in this appeal, so therefore, he's elected not to do that. So it's your claim that despite this admission, the evidence wasn't closely balanced? The case was not closely balanced. One important aspect of this is Powell was a heroin addict. He was a paid informant in the police. He claimed that he made all this stuff up, and the jury heard all this. So the prosecution was then trying to convince the jury to believe Powell's statement, not his trial testimony, but yet he comes in and readily admits to the jurors that this is all a lie, essentially. So that mitigates the prejudice from this admission. It's not a confession by the defendant to a police officer that's on tape. This is not that sort of situation where it's so overwhelmingly damaging it couldn't possibly be harmless. It's a case in which it was a statement allegedly made to a heroin addict. I think what I'm trying to get at is, assuming this person never appeared in court and testified, what other evidence was there that would convince a jury beyond a reasonable doubt that Feliway was one of the perpetrators of this crime? Right, Your Honor. And the fact that the two identifications, one in court and the other was, just to say, Rogers-Coleman, was just a merely pretrial condemnation. Did you say Rogers-Coleman? Coleman Rogers. Thank you, Your Honor. C before R. Okay, thank you. The fact is that she did not identify them in court, but yet given the delay between the shooting and the trial, she gave a very prompt pretrial confrontation identification through a photo array. Now, the complaints are that, well, this photo array was suggestive, but yet the judge looked at this exact same photo array and said that it was not suggestively prepared. So that's not a basis for challenging it. And the fact that both identifications of Parker were corroborated by physical evidence, the jacket and the cellular telephone, then, excuse me, those facts actually support by extension their identifications of the defendant here, because the claims are made, well, he just sort of made all this stuff up or falsely accused two people after hearing street gossip, which there's no basis in the record for actually saying that. Well, the evidence was actually that when, if they're claiming that his identification was too late essentially because he didn't blurt it out to police officers, the testimony was from an evidence technician who didn't question the defendant. He's not the person who's supposed to come in and take witness statements. And no one asked him, do you know who shot him? And the fact that he was shown photo arrays could also support the inference that maybe he didn't even know their names. I mean, I'm not sure it's clear in the record. He may have seen them from the neighborhoods, and he might have recognized their faces, but he did not necessarily, I'm not sure if the record shows, that that witness knew the names. And he could have just simply told the police at the scene with his arm half shot off, I was shot by William Thilia on Johnny Parker, go pick him up, essentially. He wasn't asked that, and he didn't volunteer it, and that's not a basis for criticizing. And the fact that he had adequate opportunity to observe, and the fact that he was sure, and the fact that he identified him out of the lineups within, I believe it was less than 24 hours, when he had the first opportunity to do so, shows that that was a strong identification. So for those reasons, this was a strong case, and the fact that the only defense presented was the alibi defense. A girlfriend who was sleeping could be impeached by not only a close relationship with the defendant, but also the fact that she failed to disclose this alibi at her opportunity to do so when questioned by police. So for those reasons, this court should either reject the Strickland claim or prejudice grounds of both Strickland claims as to the identification suppression issue as well, and also defer any consideration of the first promise of Strickland to post-conviction. Excuse me. There's more water to your water. Oh, thank you. And I want to take any questions you might have on the issue with respect to the cross-examination, the confidential medical records, if this court has any questions on that issue. I have no further arguments to make. I'm not sure I'm clear on the record on one thing. Getting back to the way the issues are framed in the defendant's brief, the objection that was raised at trial when the state sought admission of the Powell Statement as substantive evidence, there was an improper foundation objection. But before that, when Powell was testifying and the prosecutor was leading Powell through the statement and through what was in the statement, there were various objections raised. At one point, they were talking about the shotgun. There was an objection. At one point, they were talking about the shells. There also was an objection. When they got to that part of the statement where Powell was led through basically word for word what he had allegedly written about the event itself, my understanding of the record is there was no objection. Well, excuse me, especially in this context, without knowing what the defense was thinking, the defense counsel could have thought, we have to go to post-conviction to find out. They could have thought, well, I tried to keep this out substantively. I couldn't. A trial objection at that point is really just going to highlight that part of that statement for the jury. No, but this was before. I mean, this statement came in before they went in the back and started talking about the substantive evidence or they did it off the record. Okay. And as Powell was on the stand and was being led through the statement, there was absolutely no objection as far as I could see regarding that portion of the statement. Right. And, again, it could be a trial strategy, trial tactic to say, well, if I objected, I'm going to highlight that part of that statement for the jury. Maybe the tactic was, and we have to go to post-conviction to find out. I would object to the other parts and emphasize those for the jury, but that's the most damaging thing. I'm just kind of a sweep under the rug. If that's a possibility, we don't know in this record, and that's the state's point. And for these reasons, the state requests this court to record it. Thank you. My understanding was this defense attorney filed a motion to sever and it was denied. Okay. I'm not sure about that, Your Honor. My question is why not sever these defendants at the start? How do you justify that position? Justify the position? I'm trying to think whether there's a possibility that there would not be statements like the one challenged here. I don't know if that suggestion first came after this defendant's severance motion was denied. I don't recall exactly if there was some sort of development in the case in which a severance motion was brought and denied, and then now there's this issue that might raise severance concerns. That came up later. I'm not sure if that's actually what happened. I do remember something along those lines. Thank you, Your Honor. Counsel? I didn't frame this as plain error because I didn't think that was appropriate, given the fact that the trial court never really got a crack at considering whether or not the personal knowledge requirement was a problem in this case. Related to that, I agree with Justice Burke that the fact that defense counsel didn't object to the admission portion is highly significant because it was only the admission portion that the personal knowledge objection would be appropriate to. So when he makes a foundation objection to the entire statement, he's referring, presumably, to something that would undermine the admissibility of the entire statement and not to this specific thing because we admit under 115-10.1, the part about the gun purchase probably was properly admitted. It's the admission part that isn't, and that was not objected to. Regarding the suggestiveness of the lineup that was given to Deshaie, my opposing counsel said that the court found that it wasn't suggestive, and that isn't really true because the court never got a chance to address whether it was suggestive in the context of whether it would be suggestive when presented to Deshaie Rogers. The only time that the lineup was discussed was at the motion to suppress the identification of LeBron Graham. Graham didn't base his identification on the lineup. He pointed, he used the lineup as kind of an extra thing, but that was after he had already said it was Filia and it was Parker. And so the basis of it, he wasn't matching up a quick observation of a face with a face in a lineup. It was Deshaie who said that the guy who had the long gun also had facial hair, and that was one of the big things that was suggestive about this lineup, was that the face that had the most facial hair was the defendant's. It was also the one picture that had a different background from the other five, and so it was suggestive. The court didn't pass on that at all, the suggested nature of the lineups themselves? Only in, never in the context of considering it as to whether or not it was suggestive when shown to Deshaie Rogers. Well, I understand, I mean, it wasn't, they didn't go into what would happen when Rogers looked at it, and I understand that because there was no motion, but there was a motion regarding those lineups, and the court did pass on the suggestedness of the physical lineups themselves, correct? Right. They become suggestive, however, when you consider the context of the revelation that Deshaie had said that the only characteristic that she noticed, facial characteristics that she noticed in either of them, was that one of them had facial hair. I'm not saying that the police constructed, knowingly constructed a suggestive lineup, because the officer who arranged it said he wasn't aware of the fact that that was part of, you know, the criteria, part of what she said, and so he didn't take any pains to include faces that had a significant amount of facial hair. So, other than that, does Your Honors have any other questions? Have you ever heard of the cliché that chocolate pudding is not tasting? I have. Does it have any significant significance? Yes, yes. In relation to what, like the in-camera examination of the confidential materials? Well, I don't know what are in those materials. I admit, because they were wide open, I looked at about two and realized, wait a minute, this is not, this must be sealed, and of course it was. There's a big concern with those. I thank you. Thank you. We'll be in recess.